Jewel Smokeless Coal Corporation v. Department, and Ms. Barger, I guess we'll hear from you first. May it please the court, my name is Charity Barger. I represent Petitioner Jewel Smokeless Coal Corporation in this appeal and award of the Federal Black Lung Benefits. While we've briefed several issues before this court, I wanted to address just a focus on a couple of arguments that we believe are important today before the court. The first is the ALJ's findings on nature and length of claimants' employment. We're not supported by sustainability. Can you just speak up a little bit? Oh, I'm sorry? Yeah, thank you. Is that better? It's much better. I'm short, so I'm not close to the mic. I apologize. It'll go all the way down. Oh, okay. We're not supported by substantial evidence, and the board erred in holding those findings moot and harmless error. And the second is that substantial evidence does not support the ALJ's finding that claimant proved by a preponderance of the evidence that the obstructive lung disease that he experienced arose from coal mine employment and caused his total disability. Now, turning first to the first issue, which is the board erred in holding that the ALJ's substantial similarity ruling was moot. The reason that this is an important issue for us, Your Honors, is because the ALJ's findings on substantial similarity affected his entire opinion. So that's why we are concerned by this finding by the board that it's moot, because it's not. If we look at the big picture of claimant's employment, he worked 7 1⁄2 years underground with Joel Smokeless. That's supported by the record and by his testimony. He worked six years above ground, two years at a prep plant, four years at a strip mine, which is on a surface mine. And what the ALJ did here is that he found that claimant's employment, above ground employment, was actually substantially similar. What difference does it make? I'm sorry? What difference does it make? The question is whether he had clinical, I mean, legal pneumoconiosis. Correct. And that was determined based on the expert testimony, which the ALJ weighed. And this is all background. He worked in the mines. He worked for the coal company for some 13, 14 years. And whether those conditions, how bad those conditions were doesn't help much. It's just background. No, I would say, Your Honor, that it is very important in this particular case. Tell me why. The reason is that an expert needs to rely on an accurate work history. Right? I think it's important for us to say that. Except that we're not talking about the history that was relied on by the doctors. You're talking about the finding made by the ALJ. Right. During the hearing. And the finding was based on the man's testimony. He says above ground. He says every day there was a half inch to an inch of dust on the seats. And the court found all that impressive. But I don't understand where you're going, I must say. You know, the question is whether this man had pneumoconiosis and was disabled by it. And that finding was based on the doctors. Right. And it seems to me the fact whether he, you spent a lot of time in your brief talking about the calculation of the 13.1 years, which relates only to presumption, which is not involved here. But he actually worked longer. Those calculations had 125 days a year. And every year he worked more than 125 days. So your argument seemed to be that the ALJ seemed to make some mistakes on this collateral information about whether the underground conditions were the same as above ground and whether he made the proper calculation of 13.1, but that isn't the issue in the case. The issue in the case is did the man, was there evidence to support the conclusion that he had pneumoconiosis and was disabled by that? Right. Well, two things to that, Your Honor. First, the reason that we are stating that the nature, it's not just the length of employment, it's the nature of employment, is important. It's because of how the ALJ utilized that. So he said that Dr. Forehand had a good understanding of claimant's working conditions. And then he said that Dr. Goh also had that understanding. But Dr. Goh relied on 13 years of underground employment, which he didn't have. And then he discredited Dr. Fino for finding that his six years above ground were not substantially similar to underground mining. And that's not correct either. It's not supported by the record. That doesn't matter, right, because the BRB didn't rely, we're only reviewing what the BRB did. Right. And the BRB affirmed the discrediting of Dr. Fino, but not on that ground, on two different grounds, and didn't reach that. So I don't, because I did really, from your brief, it seemed like you were really emphasizing, well, the ALJ uses to discredit this doctor. Well, not just discredit, but credit. Yeah, your brief really emphasized the discrediting. But the BRB did not pass on that. It affirmed the ALJ's assessment of this doctor based on two other grounds. So I'm not sure that it really, I think the, it seems to me that given the scope of the BRB's decision, it was actually right that for its purposes it was moved because it didn't rely on that. Okay. Well, for us, and I understand your point there, but for us, what we are seeing is that the ALJ made this factual finding of 13 years of underground employment. The board said that that didn't matter because that was only meant to be utilized to get to the 15-year presumption. And we agree with that. But the nature and the length of claimant's employment, that was not accurately depicted. But see, the doctors getting the history, they didn't get it from the ALJ. No, they got it from the claimant. They got it from the employee. Right. And so the whole issue should be whether the ALJ appropriately dealt with the doctors and had sufficient evidence to reach the conclusions it did. And so I. Right. Well, and we can turn that to that. Well, I just don't understand. I know you spend a lot of time in your briefs, and I started chasing down all this calculations and looking at it. And I said, he actually worked longer than the 13.1 years, based on the 125 days a year. Well, one more. But it didn't matter. I mean, I'm sitting, why are we arguing about this? The reason that, and I'm going to turn to your next point, because I don't want to belabor this point. But the reason that we, I want to make clear that the reason that we are so concerned about this particular issue is that we believe that an accurate work history is necessary. And so when the ALJ makes a finding. Well, then you can criticize the employee for giving the incorrect history. And then if he gives the incorrect history, you still have to determine whether the doctor, the extent to which he played a role in the doctor's conclusions, and what the findings were, and whether that was material. But that analysis, that's OK to address that. It seems to me that's the heart of this case, whether the ALJ drew appropriate, whether its conclusions were supported by its analysis of the four experts in the case. Right, and that is an extremely important point. And it's not just the length of employment that we were concerned about. It's the nature of the employment as well. But yes, we also stated in our brief, speaking to Dr. Forehand and Dr. Goh, that their opinions were not supported by substantial evidence. Because neither of them stated, or there wasn't a preponderance of an evidence that it was more likely than not that coal dust exposure actually caused or substantially aggravated claimant's obstructive lung disease. And this is an important point that was recently spoke to by a panel of this court, is that we have to be careful when we're looking at a case that's not a presumption case. That claimant has the burden of proving, by preponderance of the evidence, that it's obstructive lung disease. But that's a legal determination, based on the evidence that's presented to the ALJ. The experts are not, in fact, it would be improper for the experts to make legal determinations. That's true. And so the ALJ evaluated the evidence before him, and made a determination about preponderance of the evidence. It would have been, I think we would be here in a different argument altogether if the experts had made legal determinations upon which the ALJ relied. No, and I'm sorry, that's how my point came across. My point was that the ALJ did not make that determination by preponderance of the evidence. Really, the only thing that Dr. Gove said specifically was that there was 13 years of exposure. He didn't dictate whether it was above ground or surface work, but there was 13 years. And there was nothing really added to that that tells us why it was coal dust exposure that caused it, and why it couldn't have been smoking, like why the entire obstructive lung disease could not be smoking. He really only said it was 13 years of exposure, and that's simply not enough. We need more than just that he worked in the coal mines. There's not a presumption until you hit 15, and we're under 15 right now. I thought that's just background information. He didn't make, reach his conclusions based on that. He reached his conclusions based on medical evidence. Well, I'm sorry, I missed your point there. I still don't understand. I mean, the doctor relied on a history given by the employee, which is still background. I mean, the employee can walk into the doctor and says, I've worked in a mine 20 years, and I have pneumoconiosis, or 13 years, stay under the presumption, 13 years, and I have pneumoconiosis. The doctor still has to make his own examination and make that determination. Yes, yes. And he comes to conclusion, and he explains why he reached that conclusion, right? Right, and it's the ALJ. And the doctors in this case, all four doctors rendered opinions as to two one way and two the other way. Right, and it's the ALJ's response. So the two supported the ALJ's findings, and the question now is, was that analysis in accepting those two and giving them greater weight than the other two, was that within the scope of what the ALJ was allowed to do? Right, whether it was supported by substantial evidence. Right, and that's exactly what we're saying, is that we do not believe it's supported by substantial evidence. There has to be more than just, there has to be more than just exposure when you're dealing with a long smoking history, an extensive smoking history. Can I ask you about Dr. Goh, because it seemed like Dr. Goh was there mostly to address these same studies that Dr., is it Fino or Fino, I'm sorry? It's Fino. So that Dr. Fino and Dr. Rosenberg are relying on, and Goh comes in to sort of address those studies and analyze them. And the ALJ thinks Goh does a much better job and goes through this in some detail and says that he or she is crediting this very detailed and well-reasoned interpretation of these same studies. And just in light of that, I mean, I feel like I at least understand why the ALJ is crediting Goh's conclusions, because Goh did this amazing job coming in and explaining all of these studies and what they do and don't mean. And so why isn't that enough to sort of, for me to understand why the ALJ thinks Dr. Goh should be credited? Right, well, I understand what you're saying. Really, he came in and he was utilized mostly to discredit Dr. Fino and Dr. Rosenberg. But when the ALJ made his findings on legal pneumoconiosis, it based it on Forehand and Dr. Goh's analysis of whether or not legal pneumoconiosis existed. And that's where we're saying he fell short. Yeah, but I'm saying that in cases like extra energy, we're pretty clear that an ALJ can credit an expert, not just for how good their explanation is, but just are they generally speaking credible? Is their presentation well-reasoned? Are there, you know, is the expert showing his strength and precision in some way? It doesn't have to be just the explanation. Right, well, and that's what we're trying to outline is that legal pneumoconiosis, when you're looking at pneumoconiosis, legal pneumoconiosis, it has to arise from coldness-exposure. And when you have a doctor, four doctors, all saying differently about where it arose from, and you have two doctors that are not giving really any explanation other than there was exposure, coldness-exposure, and the length of employment. So at what point in time do we say are we giving a presumption at any time period? Because Dr. Forehand said it didn't matter if it was seven years or 13 years. He didn't care, that was enough exposure to create obstructive lung disease. So at what point in time do we require more than exposure, coldness-exposure, to say that it has to be more to show that it's substantially aggravated? When we talk about reversibility came up with Dr. Forehand, and I actually listened to the oral arguments on Tuesday, so I know that came up before with you, Dr. Harris as well, Dr. Harris, I just sent you a doctor, Judge Harris. Yes. Maybe you wanna be a doctor right now. But when you talk about reversibility, Dr. Forehand said that pointed to coldness-exposure, but Dr. Fino said it points to both, smoking and coldness-exposure, so why couldn't it all be smoking that caused the entire thing? And that's what Dr. Fino and Dr. Rosenberg were saying, and the ALJ seemed to not accept just that premises, that smoking could cause the entire thing, and he seemed to rely more on the doctors that said it could be both. And I'm, five seconds. So, if there are no many questions, I can yield the floor to my friend on the other side. You have some rebuttal. All right, Mr. Austin. Good morning, Chief Judge Niemeyer and Judges Harris and Berner. It's always a pleasure to be here before the Fourth Circuit, and may it please the Court. I'm Brad Austin. I represent the coal miner in this case. My colleague on the other side has explained the opinions of the four experts in this case, and I agree, the opinions were what they were. You have two doctors on one side, the judge can't resolve this battle of the experts. You had two physicians, Dr. Fino and Forehand, who wanted to blame the disabling chronic obstructive pulmonary disease exclusively on cigarette smoking. You had two doctors on the other side, Dr. Rosenberg, I'm sorry, Dr. Forehand and Dr. Goh, who opined that it was an additive contribution from both coal mine dust exposure and cigarette smoking. The judge was tasked with resolving this battle of the experts. The judge did just that in this case. Judge Harris, you said, I can clearly see what the ALJ did. That's the standard. What did the ALJ do, and why did the ALJ do it? In this case, we can clearly see that. So that is substantial evidence. There's more to the analysis here than just the length of coal mining employment that Ms. Barger presented to the court as the first issue. The judge gave multiple reasons for crediting the physicians that he did. The histories were better explained by three of the four experts. Dr. Fino failed to adequately explain the histories with both regard to length of coal mining employment and cigarette smoking. If you notice in his deposition, he actually attributed a claimant with a far greater cigarette smoking history and a far lesser coal mine dust exposure history than he did in his initial report. The ALJ made a factual finding that that was not a reasonable thing for the physician to do. So in other words, he downplayed his coal mine dust exposure and upplayed his cigarette smoking history. With regard to the citations of the scientific literature in this case, Dr. Goh and Dr. Rosenberg had completely different opinions on what the same scientific studies showed. When that's the case, a fact finder has to credit one or the other or neither. Regardless, in this case, Dr. Goh was the one that the fact finder credited. That's what administrative law judges do. He did that in this case. He explained why he felt Dr. Goh's opinion was the more reasoned and more documented opinion, and he outlined all of his findings. In fact, he spent pages outlining. Judge Harris, I think you mentioned the American Energy v. Good case. In the American Energy v. Good case, we had a very scant finding from an administrative law judge, and that's what this court really had an issue with. In that case, the ALJ summarily stated, there's coal mine dust exposure, there's cigarette smoke exposure, COPD's additive, that's that. In this case, we have multiple findings regarding each of the four experts as to why this administrative law judge assigned the weight that he did to each of those. He spent pages in his analysis and provided headings for each of the four experts and the five total reports. He analyzed each of their opinions separately. He explained what he credited and what he discredited with regard to each, and then at the very end, he weighed all of those expert medical opinions collectively. This is a model approach for an ALJ when it comes to resolving a battle of the experts. This is what this court does. It defers to the fact finder when you can tell what the fact finder did and why the fact finder did it. There's substantial evidence to support the decision here. I would note, interestingly, the procedural history of this case is a little bit unique because the administrative law judge did initially find that the claimant was entitled to benefits. The Benefits Review Board then remanded back for the administrative law judge because he initially engaged in an improper analysis with regard to legal co-workers pneumoconiosis. The board got that right. That tells this court that the reviewing court is doing its job. The Benefits Review Board scrutinized the first decision from the ALJ and specifically told the judge what needed to be done on remand. The very first thing the judge did on remand was outline exactly what the Benefits Review Board remanded for. He said, I did get the standard wrong. I'm reanalyzing this evidence under the proper standard. Claimant does have the burden of proof. Claimant does have to show legal co-workers pneumoconiosis. And in that second opinion, it seems he really went above and beyond to do just that. We know exactly what he did, exactly why he did it. This court must affirm those findings. He resolved the battle of the experts. In my opinion, your honors, this case is that simple. It is a substantial evidence case where a battle of the experts existed. This is why we have ALJs. This court may have weighed the very same evidence completely differently, but it's not this court's role to do that. Another ALJ may have weighed the evidence differently, but we have this ALJ looking at all the evidence, considering all the evidence, making a finding, and specifically explaining to this reviewing court exactly what he did. That's the simplicity of this case. If this court has any questions for me, I'm happy to answer them. If not, we will just rely on our brief, where we believe we addressed all of the issues that the employer outlined. Thank you, Mr. Austin. Thank you. Ms. Barger. I expected him to take more time.  I understand my colleague on the opposite side, his position, and he has wrapped this up as to a battle of the experts, and I just want to point out just one thing to the court, an important issue before this court, is that again, we are not dealing with a 15-year presumption case. So the ALJ, when he reviewed Dr. Forehand's and Dr. Goh's opinions, he had to find that they were enough to establish legal pneumoconiosis, and then once that's happened, then we can bring in the other opinions and decide whether or not, then yes, it's this weighing of the battle of the experts. But if you look at Dr. Forehand's supplemental report, he specifically says that Mr. Hale's exposure to cigarette smoke had a larger effect than his exposure to coal mine dust. He says there's not a single fact or set of facts that disproves or excludes that coal dust exposure, that it's a coal mine dust-related lung, and that it's a substantial coexisting cigarette smoke-induced and coal mine-induced related disease. And that's, to me, that does not show, more likely than not, by preponderance of the evidence, that it was coal dust that was substantially contributing and significantly related to. And these are important words, substantial, significant. We're not looking at something trivial. We have to show that the coal dust exposure is causing, is more, that it's worse because of the coal dust exposure. That's what we have to show. And we just put forth to the court that we don't believe that the ALJ made those factual findings at the beginning, and that's why Dr. Fino's and Dr. Rosenberg's reports were not even important at that point in time, because that's something that has to be done at the beginning. And that is our argument for the court, if you don't have any further questions for me, then we will rest on our brief and our arguments today and ask that our petition be granted. All right, thank you very much. Thank you very much. We'll adjourn court for the day and then come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States.
judges: Paul V. Niemeyer, Pamela A. Harris, Nicole G. Berner